## TERRY *v.* HENNEN.

An entry, and payment of the price, of a portion of the public lands subject to entry, does not divest the title of the United States; the title is not divested until a patent has been issued. The purchaser acquires only an equitable title, subject to the discretion of Congress; but such a title is sufficient to sustain a petitory action.

The payment of the price of public lands of the United States, entered without warrant of law, can in no manner affect the rights of the government. No equitable title vests in the purchaser, whose only claim is for the return of the money paid by him.

The constitution of the United States vests in Congress the exclusive power to dispose of, and make all needful rules and regulations in relation to, the public lands. The State courts have no authority to interfere with the primary disposal of the soil. That power rests exclusively with the general government, which has from the beginning acted upon it by legislation, through boards of commissioners, receivers, and registers, under the final supervision of the secretary of the treasury; and the decisions of that officer, made within the jurisdiction vested in him, cannot be reviewed by us.

The sale of a thing belonging to another is null.

The rightful owner of receipts, given by the the receiver of public monies, for the price of public lands sold without warrant of law in the Greenburg land district in this State, must be considered as the person meant by the word "*grantee*," in sec. 1 of the act of Congress of the 29th August, 1842, providing for the refunding, under certain circumstances, of money paid for public lands in that district; nor will a sale, by authentic act duly recorded, of the lands, which does not transfer the receipts, or make any mention of them, nor the execution of an act under private signature, purporting to be a transfer of the lands to a person with whose money the transferrer acknowledges in the act that he purchased them, amount to such a transfer of the receipts as will entitle the vendee or the furnisher of money to claim the amount of the receipts from the treasury. *Per Cur:* In the transfer of

debts to a third person, the delivery takes place between the transferrer and the transferree, by the giving of the title. C. C. 2612. The titles in this case are the receipts; and by "*grantee*" the act of 1842 means the owner of them.

Without an assignment, or proof of actual delivery, the possession of the receipts given by a receiver of public moneys for the price of public lands, will give the holder no better title to them than he would have to a promissory note payable to the order of the purchaser of the lands, held by him without endorsement or proof of transfer and delivery. Art. 2612 C C. supposes that when the title is not transferable by delivery, and does not bear upon its face evidence of the lawful possession of the holder, proof of the delivery must be made.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Hoffman*, for the plaintiff.

*Halsey*, on the same side. Defendant founds his pretensions on a document purporting to be a transfer of the lands from *Lea* to him, in which *Lea* states that he had entered them with the money of the defendant; and upon a receipt signed by *Lea*, dated March 1836, for $900, to be used in entering lands for the defendant. The plaintiff objected to the introduction of these documents, on the ground that they were " *acts under private signature, and inadmissible as evidence against the plaintiff.*" As evidence of a sale, the act of transfer was inadmissible. C. C. 2417. As evidence that the lands were entered with defendant's money, and that *Lea* received the sum of $900 for that purpose, the act of transfer and the receipt would have been inadmissible, had they been authentic acts ; as private acts, besides that objection, they were subject to this, that they had no date as against the plaintiff, except from the day of their production in court. The sale to the plaintiff was prior to that to the defendant. It was recorded in July, 1837; that to the defendant was not recorded until 1845. 7 N. S. 662.

The defendant's evidence, if admissible, proves that *Lea* entered the lands in his own name. If he bought them with the defendant's money, and intended them for the defendant, the defendant had perhaps an action against him for a title. But the title was in *Lea*, and he could convey the lands to any one. The plaintiff purchased them, and in good faith. The title is in him, and he is not affected by the equities existing between *Lea* and the defendant. The plaintiff is *Lea's grantee*, and the claim belongs to him. This is the express provision of the act. It is obvious from the proceedings before the department at Washington, that the only question at the time the parties were referred to a court, respected the *title* to the lands. The department could not determine which of the parties was the *grantee*. The decision of this question is conclusive of the dispute, for the claim does not exist except by the act of 1842, which gives it to the grantee.

But the defendant, knowing that he had no right to the lands, and could not claim the return of their price as *grantee* of *Lea*, alleged that no title passed from the United States to *Lea*, that there was no purchase by the entry, and therefore the payment of the price was a mere deposit of so much money, for which the United States are responsible to him, as owner of the money deposited.

It is certainly not essential that a title should have passed to *Lea* by the entry, and from *Lea* to the plaintiff by the act of sale. The act of 1842 gives the claim to the person who entered the lands, or his *grantee*. The plaintiff and the defendant are both *grantees* in name, but the priority of the plaintiff's purchase gives him an equitable preference to the defendant. Supplement, P.

But the position assumed by the defendant, that no title passed by the entry is untenable. There is nothing in the act to the contrary. Congress authorized the return of the price of lands in the district, not because no sale had been made, but because the surveys were erroneous and imperfect; because the lands were incorrectly located, the actual locations either conflicting with prior claims, or the proper locations so conflicting or differing from those exhibited to the purchasers at the time of entry. There is nothing in the act of 1842, that implies that the lands had not been sold. The implication is rather, that the lands had been sold, and the treasury department have so considered, since they have required in every instance of an application under the act, a certificate that there was no mortgage on the land of the applicant, or conveyance of it from him.

It being certain that the public lands of the district were subject to purchase, the entry by *Lea* at the land office was a purchase from the United States,

TERRY
v.
HENNEN.

and, unless these lands were covered by a prior claim or reserved, vested a title to them in *Lea*. *Beaumont* v. *Covington*, 2 Rob, 190. *Carroll* v. *Safford*, 3 Howard, 450-61.

Let us examine the defendant's pretensions, without reference to the act of 1842, and as if the United States were responsible as an individual. We cannot, for the rsason that there was not a valid sale of the lands, consider the money a deposit. It was not left and received in trust, but *paid*. Admit that the sale was not valid, the transaction was not the less a sale. If so, the right to the return of the price arises from the failure to convey the lands, for which the price was paid. If *Lea*, the purchaser, held the lands, the legal right to demand the price would be in him; but a court of equity, on proof of *Lea's* fraud, would give the price to the defeudant. But *Lea* has sold to the plaintiff, and as the price is due only in consideration of the loss of the land, it is not due to *Lea* until the plaintiff has called on him to refund the price between them, and so returned the loss of the land upon *Lea*. If *Lea* has no claim, the defendant, whose claim is an equitable preference to *Lea,* has none, unless its cause exists against the plaintiff; that is, unless the plaintiff was a party to *Lea's* fraud.

Let us now suppose that the United States, being owners of the lands, offer to return to the plaintiff, *Lea's* grantee, the price paid by *Lea*, and that the plaintiff accepts the compromise. *Lea* and the defendant have no right to the price; and therefore neither of them can prevent this compromise between the United States and the plaintiff. The act of 1842 was such an offer on the part of the United States, and the application of the plaintiff for the price an acceptance of the offer. The defendant had no right to interfere and oppose the payment of the money to the plaintiff.

*Grymes*, for the appellant.

*D. N. Hennen*, appellant, *pro se*. I. The claim of the plaintiff to the land certificates in defeudant's possession, being founded on a notarial act of sale from *Lea* of the lands therein embraced, while the defendant's possession and property therein is justified by the evidence on record that the entries were made by *Lea* for his use and with his money, the question whether lands form the subject matter of consideration, or money held in trust and represented by these certificates must be decided by the laws of the United States. The constitution of the United States, art. 4, § 3, vests in Congress the exclusive power of disposing of, and making all needful rules and regulations in relation to, the public lands. The ordinance of July 13, 1787, 1 Land Laws, pp. 23, 187, prohibits the States from making laws interfering in any manner with the primary disposal of the soil by the United States. Land can only become subject to the operation of the laws of a State, on being separated from the public domain, and divested from the United States by a patent. *Wilcox* v. *Jackson*, 13 Peters, 516, 517. *Jourdan* v. *Barrett*, 4 Howard, 184.

II. The application by *Lea* for the entry and purchase of the lands in the certificates claimed, conferred no legal or equitable title on him to said lands. The legal title is conveyed by the patent alone. *Wilcox* v. *Jackson*, 13 Peters, 498. *Stringer* v. *Young*, 3 Peters, 320-344. *Broadman* v. *Lessees of Reed* and *Ford*, 6 Peters, 328-342. *Bagnal* v. *Broderick*, 13 Peters, 436-450. *Brush* v. *Ware*, 13 Peters, 93, 107, 108. The applicant for entry and purchase acquires at best an equitable title. As such, the holders of land certificates have been considered as having such an interest as would enable them to bring a petitory or possessory action. *Metoyex's case*, 6 Robinson, 140. *Guidry* v. *Grivot*, 19 La. *Beaumont* v. *Covington*, 2 Rob. 190. *Boatner* v. *Ventress*, 8 N. S. 653. Upon an analogous principle, this action may be maintained against a trespasser by one who has but a colorable title. *Terrell* v. *Chambers*, 12 La. 578.

*Lea,* in the words of the law, Gordon's Digest, § 1574, was in the situation of "any person who may apply for the purchase," &c. The payment of the money made the United States holder of the land in trust for *Lea*, the equitable owner. But this is not absolutely, unqualifiedly, and universally true, as the Supreme Court of the United States intimate in the case of *Carroll* v. *Safford*, 3 Howard, 450-461.

And this brings us to the question of fact in this case. Were the lands referred to subject, by authority of law, to entry and purchase? The law of August 29, 1842, and the plaintiff's action based upon that law, is decisive of this point. The act declares "the United States cannot issue patents therefor." To say that the

applicants for lands in that district cannot receive titles (patents) from the United States, is equivalent to this, viz: that they have no equitable title to the lands, for he is an equitable owner who " has entered into a valid contract for the purchase of land." 2 Story's Equity, § 790. Legal and equitable titles are co-relative terms; to deny the right to the first is to settle the condition and character of the latter. *Non constat,* that the lands in question have been surveyed and approved as required by law (2 Land Laws, 890)—that they are not within the reservations for french and spanish claims, referred to in the second section, prohibited from being offered by 1 Land Laws, 184. The refusal to grant patents is the best evidence to show that acts of officers were illegal and unauthorized by law. *Pepper v. Dunlap,* 9 Robinson, 288. The granting a patent is not a matter of caprice: where the laws of the United States authorize it, the patent follows as a matter of course. 2 L. Laws, Opinions, p.——. On the other hand, it is not a mere ministerial act, which the President of the United States is bound to comply with and sign, though aware that thereby he violates his oath to support the constitution and laws. 2 L. Laws, Opinions, p. 26. In the present case, the proceedings of the St. Helena land office are an absolute nullity. Vide analogous case, 2 Land Laws, p. 39, Wirt's opinion.

III. The receipt of the money by the officers of the St. Helena land district, created a trust on their part to hold the same to the use of the party to whom it belonged. The evidence shews that the defendant's money was employed in the entry. The certificates or evidence of payment, come under the head of personalty; they are essentially choses in action. The plaintiff shows no assignment of them; he is without possession and without title.

IV. The subrogation of warranty granted by *Lea,* in his sale of the lands to *Terry,* gave him no title. No contract of sale had intervened between *Lea* and the United States, for the want of authority on the part of the officers of the land district to give consent—the essential element of a sale in behalf of the government. The principal contract not existing, the accessory (warranty) cannot be inferred. *Lea* had no obligation on behalf of the United States to which he could subrogate *Terry,* and the latter acquired nothing thereby. Warranty has a fixed and determined signification under the laws of Louisiana. It is quite distinct from the claim which a *cestui que trust* has upon his trustee for the payment of money. The laws of Louisiana recognize a privilege on behalf of the vendor, but none on behalf of a vendee to pursue trust funds or any other funds, on a failure of consideration or title. Warranty itself, is a personal obligation, and would not pass from the vendee to his vendee, unless by special subrogation. 1 N. S. 352. 6 N. S. 321. *Smith v. Wilson,* 11 Robinson. By parity of reason, the claim against the officers should have been specially transferred, which is not even referred to in plaintiff's title of May 26, 1837. It did not run with the land, with which it had no connection. The subrogation of *Lea,* was an undertaking on his part that the United States would guaranty the title. The plaintiff has his recourse, in case of eviction, against *Lea,* but no claim against this fund. It would be carrying construction to the very verge of the law to say, "*ut res magis valeat quam pereat,*" that the subrogation of warranty must be considered as an assignment of the claim. Acts not valid in one form, may have effect if they unite the requisites of some other; but it would be treating form and substance as alike, to say that where a contract fails to take effect on one subject matter, it must, on a principle of compensation, take hold of some other.

V. The acts of the officers of that land district being void, as done without authority and contrary to the dispositions of law, and, so far as the political corporation the of United States are concerned, *res inter alios acta,* the claim thus assigned existed against the officer who received the money. It is clear that no act of an officer of the United States can bind the interests of the public, unless done within the scope of his official duty, and by authority of law. 7 Cranch, 306. No evidence is found in the record of any notice of assignment, without which, as regards defendant, a third person, it is of no effect. L. C. art. 2613. By the payment of the money into the treasury, the United States did not become the debtor. The rule which holds in individual transactions, does not, in consequence of the extent and intricacy of the affairs of the public offices, hold as regards the United States. They are not imputable with the acts, measures, or laches of their agents, nor chargeable with notice, &c. 7 Cranch, 366. They occupy the position of an involuntary stake-holder, ordering, by the act of '42, the

treasury to be voided of money received without warrant or authority of law. If they could be considered the debtor, the provisions of art. 2613 would not apply to them; that, and the other provisions of the Code, applying to legal obligations that may be enforced by suit. No suit can be instituted against the United States. The possession of the title to this incorporeal debt, (in defendant) is the only mode of transfer.

VI. The sale from *Lea* to *Terry*, if it could be considered as an assignment of the certificates, does not comply with the requirements of the circular of the land office, the lands not being designated by township, range, and section. 2 Land Laws.

VII. The sale from *Lea* to *Terry*, before the parish judge of St. Tammany, but registered in St. Helena, contains the following description. " A certain tract, or parcel of ground, at or near the mouth of Terry's creek, in the parish of St. Helena in this State, containing 700 acres, be the same more or less, which the said seller declares he acquired by purchase from the government of the United States." The registry of this act was no notice, and can have "no effect" against third persons. Act of 1810, p. 596, § 36, *Bullard* and *Curry*. Act of March 20, 1827, 2 Moreau's Dig. 302, § 2. *Hyde* v. *Bennett*, 2 Annual, 800. *Jartroux* v. *Dupeire*, Ib. 610. *Lacour* v. *Currie*, Ib. 791. One of the objects of the registry law, is to protect the innocent purchaser from the fraud of the ostensible owner's making a second sale. The registry is made the legal repository of notice. This court has had occasion in the cases cited, and in that of *Shepherd* v. *O. C. Press Co.*, to administer wholesome admonition upon the necessity of complying strictly with the law of notice so as to charge the interests of third persons. It is obvious that it would be destructive of the policy of the laws relating to registry, to require that defendant should be compelled to have visited and to have ferreted the land office at Greensburg, for the purpose of ascertaining whether lands registered at St. Helena, as conveyed under the description "situated at, or near the mouth of Terry's creek &c.," were the same called for by certificates, having reference not to natural boundaries, but to land surveys, by base, meridian, and sectional lines.

VIII. Independently of all these considerations, the plaintiff cannot recover the certificates, because by leaving those certificates in the possession of *Lea* at and after the time of the alleged sale, he enabled his vendor to act as owner, and thereby prejudice a third party. The principle is well settled by courts of equity, that although the plaintiff may have a right to the assistance of the court to assert his title, yet if the defendant has an equal claim to the protection of a court of equity, the court will not interpose on either side, according to the maxim *In æquali jure mélior est conditio possidentis*. Mitford Eq. Pleadings, 274. 1 Fonblanque, Equity, B. 1, ch. 4, § 25. 1 Madd. Ch. P's. 170, 171. The case of *Head* v. *Egerton*, 3 Peere Williams, p. 281, seems to be strictly analogous to the present case. See also *Bernard* v. *Drought*, 1 Molloy, 38, reported in 16 English Chancery Reports.

*Halsey*, in reply: The defendant claims as owner of the certificates, and cited authority to show that they were assignable. An assignment in express terms is essential. I refer to the authority cited by the defendant. The court referred to art C. C. 2612. " In the transfer of debts, rights or claims to a third person, the delivery takes place between the transferrer and the transferee by the giving of the title." If the certificates are receipts for money paid, they are not the title to the claim for the money. A note is a title, it expresses the obligation to pay; a receipt is not, for the obligation to pay is not expressed in it, but implied. The title is the cause of action; and the title mentioned in the article is the evidence of the cause of action and must *express* it. The defendant does not own the receipts by mere possession. The plaintiff does not hold them; and though, under the Code, the delivery of them would be essential, it is not under the act of 1842, which gives the claim to the grantee of the land, without requiring the transfer of the certificate. The defendant argued, that *Terry* is in fault for having permitted *Lea* to retain the certificates, and so given him an opportunity, as the possessor, to defraud the defendant. The court has remarked that the defendant did not pay *Lea* for the lands after the plaintiff had purchased them, but had advanced the money long before. *Terry* recorded his title. But if, as the defendant alleges, *Lea* was already insolvent, we cannot presume that he suffered any damage by not suing *Lea* for the money.

The judgment of the court (*King*, J. absent,) was pronounced by

Rost, J. On the 19th March, 1836, *Franklin W. Lea* entered certain lands in the parish of St. Helena, at the land office for the Greensburg land district. *Lea* paid for the land, and received from the land office two receipts for the price, numbered 450, 451. On the 26th of May, 1837, *Lea* sold these and other lands to the plaintiff, by an authentic act, which was recorded in the parish of St. Helena, on the 10th of July, 1837, without transferring the receipts, or making any mentino of them. In 1842, Congress passed an act, the first section of which provides: "That, in all cases where lands shall have been entered at the land office in the Greensburg, late St. Helena, land district, in the State of Louisiana, where the United States cannot issue patents therefor, owing to the errors and imperfections of the public surveys, or to conflicting claims, it shall be lawful for the person having made such entries, or his or her heirs or legal representatives, or *grantees*, or their heirs or legal representatives, who may be *legally* and equitably entitled to the same, after a demand of the patent, and a refusal to issue the same, to surrender his or her certificate of purchase to the secretary of the treasury to be cancelled; and, upon such surrender, it shall be the duty of the secretary of the treasury to refund, without interest, the purchase money for such lands to the person entitled to the same, out of any money in the treasury not otherwise appropriated."

In 1844, the plaintiff, considering himself the grantee of *Lea*, applied to the treasury department for the return of the price paid by *Lea*, under this act of Congress. His claim was approved, but, before the money was paid to him, the defendant made opposition, alleging, as he now alleges, that the lands were purchased by *Lea* with his money, and for him. The defendant founds this pretension on a document under private signature, posterior in date to the title of the plaintiff, purporting to be a transfer of these lands from *Lea* to him, in which *Lea* states that he had entered them with the money of the defendant; and upon a receipt signed by *Lea*, and dated 10th March, 1836, for $900, to be used in entering lands for the defendant. The secretary of the treasury being unable to determine to whom the claim belonged, referred the parties to the State courts. In conformity with this decision, the present action was commenced.

The plaintiff asks the delivery of the receiver's receipts, alleged to be in the defendant's possession, or $469 37, the value of those receipts. He also claims damages. There was judgment in his favor in the District Court, and the defendant appealed.

We consider it as undeniable that the application of *Lea* for the entry and purchase of the land, which has given rise to this controversy, and the payment of the price by him, would not have divested the United States of the title, even if the land had been subject to entry; and that *Lea* would only have acquired an equitable title, which although sufficient to maintain a petitory action, remained within the discretion of Congress, until a patent issued. *Lefebvre* v. *Comeau*, 11 La. 321. *Stark* v. *Orillon*, 13 La. 56. *Guidry* v. *Woods*, 19 La. 334. *Lott et al.* v. *Prudhomme et al.* 3 Rob. 141. *Metoyer* v. *Larenaudière*, 6 Rob. 139. *Wilcox* v. *Jackson*, 13 Peters 498.

We believe it to be equally true that, if the entry was made without warrant of law, the rights of the public were in no manner affected by it—that no equitable title vested in *Lea*; and the only claim of his grantees, in this case, is for the return of the money paid by him to the receiver, and placed by the latter in the national treasury. *Guidry* v. *Woods*, 19 La. 339. *Carroll* v. *Stafford*, 3 Howard 450.

Under this view of the law, it becomes material to enquire whether the land applied for was subject to entry and purchase.

Judge *Woodruff* testifies that the treasury department has refused to grant patents for the lands entered in the St. Helena land district, and referred to in the pleadings, upon the ground that the acts of the officers at the St. Helena land office were unauthorized and illegal, and that no authority had been granted by law for the disposal and sale of said lands; that the President proclaimed the sale of those lands, but that the act of Congress, under which it was proclaimed, did not embrace that district. The counsel for the plaintiff alleges error in this decision of the secretary of the treasury, and insists that we should disregard it.

The constitution of the United States vests in Congress the exclusive power of disposing of, and making all needful rules and regulations, in relation to, the public lands. We have no authority to interfere with the primary disposal of the soil. The matter rests exclusively with the general government, which has, from the beginning, acted upon it by legislation, through boards of commissioners, receivers and registers, under the final supervision of the secretary of the treasury. The decisions of that officer, made within the jurisdiction vested in him, cannot be reviewed by us.

But it seems to us moreover, that the application of the plaintiff to be refunded the sum paid, is an acquiescence on his part in the decision. Upon his application, the comptroller of the treasury wrote to him as follows: "On the 15th of October, 1844, the first auditor of the treasury reported to this office, in persuance of the act of Congress of the 29th of August, 1842, the sum of $819 37 for a payment to you, as assignee of *Franklin W. Lea,* for lands *erroneously* sold to the said *Lea,* at the land office at St. Helena, per receiver's receipts, nos. 450, 451, 452."

After this application, and the action of the treasury department upon it, the plaintiff is estopped from alleging that he acquired an equitable title to the land, and that the United States held it in trust for him. The right of ownership of the United States was no more affected by the illegal acts of their agents, than it would have been if any other person not connected with the land office had attempted to dispose of the land.

The claim being merely for a sum of money, our next inquiry must be whether either of the parties to this suit is the grantee of *Lea,* within the meaning of the act of Congress.

The plaintiff contends: 1st. That the subrogation of warranty, in the sale from *Lea* to him, gives him the right to claim the certificates from the defendant, and to receive their amount from the United States. 2d. That by the payment of the money in the treasury, the United States became the debtors of *Lea,* and the debt was transferred to the plaintiff before the United States had been notified of the alleged transfer to the defendant. 3d. That the transfer to the defendant is under private signature, and has no date against the plaintiff.

The sale from *Lea* to the plaintiff was the sale of a thing belonging to another, and therefore null. The subrogation of warranty stipulated could not affect the United States as vendors, because they had not sold. That subrogation was upon a contract which did not exist, and can produce no legal effects.

It appears to us that the United States cannot be considered as debtors of *Lea,* in the ordinary sense, on account of the money paid by him to the receiver, and placed by the latter in the treasury; but, if they should be, the plaintiff has not shown a legal transfer of the certificates. In the transfer of debts to a third

person, the delivery takes place between the transferer and the transferee by the giving of the title. C. C. 2612. The titles in this case are undoubtedly the certificates; and, we cannot understand the act of 1842 otherwise than as meaning, by *grantee*, the rightful owner of them.

The plaintiff having failed to show his right to the certificates, his petition must be dismissed. But this decision is not to be understood as recognizing the claim of the defendant to the fund in the treasury. The private act under which he claims is, like the title of the plaintiff, a mere transfer of land. It seems to be admitted that he holds the certificates, which it is the object of this suit to recover from him. But he has failed to produce them in court, and to show that they were either assigned or actually delivered to him by *Lea*, who is admitted to have died in 1838. These are facts which it was in the power of the defendant to prove, if they existed; and we are bound to presume that they did not. Without an assignment, or proof of actual delivery, the possession of the certificates, if shown, would give him no better title to them than he would have to a promissory note, payable to the order of *Lea*, held by him, without endorsment, or proof of transfer and delivery. Art. 2612 C. C. pre-supposes that when the title is not transferable by delivery, and does not bear upon its face evidence of the lawful possession of the holder, delivery must be made.

It is not material, in a legal point of view, that the money paid by *Lea* came from the defendant. The equity of his case is no greater than that of the plaintiff, who received no consideration for the price he paid. The applications and entries were made in the name of *Lea*, and his legal representatives are the owners of the certificates until a valid transfer is shown. As the case is presented to us, the defendant's possession is the possession of *Lea*.

It is therefore ordered, that the judgment in this case be reversed, and the plaintiff's petition dismissed, with costs in both courts.